**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| STEVEN GROHS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CRYSTAL RAUPP, *et al.*,<br><br>    Defendants. | Case No. 25–cv–00637–ESK–EAP<br><br><br>OPINION |

**KIEL, U.S.D.J.**

*Pro se* plaintiffs Steven Grohs and Joseph Walls challenge the constitutionality of their conditions of confinement under the Eighth and Fourteenth Amendment. They bring this action against New Jersey Department of Corrections (NJDOC) officials Crystal Raupp and P. McGill[1] in their individual capacities. While defendants seek dismissal of this action for failure to state a claim and qualified immunity (Motion to Dismiss) (ECF No. 14), plaintiffs seek injunctive relief to compel defendants to repair certain conditions of their confinement (Motion for Preliminary Injunction) (ECF No. 23 (Prelim. Inj. Mot.)). Because plaintiffs have not plausibly alleged that defendants deliberately denied them adequate access to hot showers, laundry services, and air conditioning, the Motion to Dismiss is granted, and the amended complaint is dismissed without prejudice. The Motion for Preliminary Injunction is denied as moot.

---

[1] Defendants refer to McGill as Nah. They indicate that Nah is formally known as McGill. (ECF No. 14–1 p. 1; ECF No. 18 p. 1.)

## I.  BACKGROUND

On January 21, 2025, plaintiffs commenced this 42 U.S.C. §1983 action for declaratory relief, injunctive relief, and damages.  (ECF No. 1.)  I granted their applications to proceed *in forma pauperis* and permitted most of the claims asserted in their initial complaint to proceed past screening.  (ECF Nos. 3, 5.)  On October 16, 2025, defendants sought to dismiss the initial complaint, but their motion was administratively terminated. (ECF Nos. 11, 14.)  On October 24, 2025, plaintiffs filed the amended complaint.  (*See generally* ECF No. 12 (Am. Compl.).)

The amended complaint asserts that plaintiffs are civilly committed residents at the Special Treatment Unit (STU) in Avenel, New Jersey.  (*Id.* ¶¶3–5.)  They reside in the West Housing Unit of the STU's Main building.  (*Id.* ¶¶12, 74.)  Grohs, who was admitted to the STU in 2011,[2] suffers from a shattered vertebra, tennis elbow, arthritic toe and methicillin-resistant staphylocuccus aureus.  (*Id.* ¶¶51–55.)  Walls, who was admitted to the STU in 2005, suffers from arthritic knees, asthma and high blood pressure.  (*Id.* ¶¶63, 64.)

Plaintiffs' grievances against defendants fall into three categories.  First, they allege that the showers in their housing unit sometimes produce cold water.  (*Id.* ¶¶33–72.)  The push-button controls in the showers do not allow residents to adjust the unpredictable water temperature.  (*Id.* ¶¶37, 43.)  Despite defendants responding to plaintiffs' grievances that the hot water has been repaired, the issue is ongoing.  (*Id.* ¶¶56–61, 65–72.)

Next, plaintiffs assert that their laundry facility violates state requirements and do not consistently provide clean and dry clothes.  (*Id.*

---

[2] Grohs is a repeat filer who has commenced several lawsuits against the DOC and various state officials in this District.

¶¶ 73–103.)   Grohs alleges that his clothes were returned damp on January 4 and January 7, 2025, and that a lockdown caused his clothing to remain unwashed for several days.   (*Id.* ¶¶ 93, 95, 96.)   Walls alleges that over a six-month period, he repeatedly lacked clean kitchen-work clothing.   (*Id.* ¶ 102.) Although the North and West Housing Units share a laundry facility, and only one of the three dryers available to 81 residents is operational, the North Housing Unit residents do not experience any of these hardship.   (*Id.* ¶¶ 75, 78.)   Defendants are aware of these issues but have not taken any remedial action.   (*Id.* ¶ 75.)   Instead, several new dryers were installed in different housing units. (*Id.* ¶ 85.)   Because residents can keep only two plastic hangers and eight days' worth of clothing in their rooms, plaintiffs claim they "have no definitive way to dry their wet clothing" or "to maintain a reasonable degree of hygiene."   (*Id.* ¶¶ 27, 76, 82, 86.)

Lastly, plaintiffs take issue with defendants not repairing the air conditioning during the summer of 2025.   (*Id.* ¶¶ 104–131.)   Grohs alleges that in June 2025, his room reached 84 degrees Fahrenheit for 21 days.   (*Id.* ¶ 124.)   Walls similarly alleges that his room reached 83 degrees Fahrenheit for 16 days.   (*Id.* ¶ 128.)   Both allege sleep disruption, lethargy, and impaired participation in treatment.   (*Id.* ¶¶ 126, 127.)   The extreme heat and high humidity has caused black mold to grow in a number of rooms, slippery floors and stairs railings, water dripping from walls, and foggy windows.   (*Id.* ¶¶ 118, 119.)

## II.  MOTION TO DISMISS

Although the Court preliminary reviewed plaintiffs' claims under 28 U.S.C. § 1915 (ECF No. 5), that analysis did not determine whether their allegations would survive a properly supported motion to dismiss filed by a defendant after service.  *See Richardson v. Cascade Skating Rink*, No. 19–08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes

[a] §1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

Pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). "Under [Rule] 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (second alteration in original). In reviewing the sufficiency of a complaint, a court must "take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth.  Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (cleaned up).  "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings."  *Id.* at 790.

### A.   Conditions of Confinement

Plaintiffs argue that their Eighth and Fourteenth Amendment constitutional rights have been violated by the STU's conditions.  Eighth Amendment claims challenge cruel and unusual prison conditions.  *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 283 (D.N.J. 2013).  "In such … cases, 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).  "Thus the mental element is a subjective one: deliberate indifference."  *Id.*  "And a deprivation that is sufficiently 'serious' is a denial of a 'minimal civilized measure of life's necessities.'"  *Id.* (quoting *Farmer*, 511 U.S. at 834).  "That generally implies that prison officials must provide adequate food, clothing, shelter, and medical care, and must institute reasonable safety-measures."  *Id.*  "To fall short of that standard is to exceed the proper bounds of punishment."  *Id.*

Plaintiffs are not prison inmates.  Rather, they are confined pursuant to a civil order of commitment.  "Certainly, it is true as a general matter that persons involuntarily committed are entitled to more considerate treatment and better conditions of confinement than are persons who are being criminally punished."  *Id.*  "[T]he state has no *less* of a duty to provide civilly committed

5

persons with adequate food, shelter, clothing, medical care, and safety measures." *Id.* "[B]ecause civil commitment is not punishment, the hardships of civil confinement cannot be punitive; they must "bear some reasonable relation to the [nonpunitive] purpose for which persons are committed." *Id.* (alteration in original) (quoting *Seling v. Young,* 531 U.S. 250, 265 (2001)). "When analyzing conditions of civil commitment, some judges in this District have continued to rely on Eighth Amendment "deliberate indifference" standards, either alone, by analogy, or in combination with other factors." *Id.* at 284. But other judges find that "it is the Fourteenth Amendment, not the Eighth, that is most applicable." *Grohs v. Santiago*, No. 13–03877, 2014 WL 4657116, at \*3 (D.N.J. Sept. 17, 2014).

"In certain contexts … case law has analyzed conditions of confinement … under the Due Process clause of the Fourteenth Amendment." *Yatauro*, 984 F. Supp. 2d at 283. "That analysis requires a court to weigh an individual's liberty interests against the relevant interests of the state" under the "standard of reasonable 'professional judgment.'" *Id.* In other words, "[t]he Fourteenth Amendment requires that committed persons not be subjected to conditions that amount to punishment, or exceed the proper bounds of professional discretion." *Santiago*, 2014 WL 4657116, at \*3. The "'professional judgment' standard applies to 'professional decisionmakers,' defined as 'person[s] competent, whether by education, training or experience, to make the particular decision at issue.'" *Yatauro*, 984 F. Supp. 2d at 283 (alteration in original) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 n.30 (1982)); *see Shaw by Strain v. Stackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) (applying to a claim that personnel of a state mental institution had failed to protect a patient from assault the professional judgment standard analysis to the institution's superintendent, program coordinator, unit manager, resident supervisor, and

6

recreation director but the deliberate indifference standard to residential service aids and nonprofessionals who lacked decision-making authority).

"A central issue, then, is whether the conditions of confinement cross the line that separates institutional administration from punishment." *Santiago*, 2014 WL 4657116, at \*4. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979)). "Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose … and whether it appears excessive in relation to that purpose." *Id.* (alteration in original) (quoting *Bell*, 441 U.S. at 538–39.) "Thus, if a particular condition or restriction … is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* (quoting *Bell*, 441 U.S. at 538–39). "Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court may permissibly infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon [civilly committed inmates]." *Id.* (alteration in original) (quoting *Bell*, 441 U.S. at 538–39. In other words, the plaintiff must "show that the defendants acted in a manner evincing 'a reckless disregard of a known risk of harm.'" *Carson v. New Jersey Dep't of Corr.*, No. 16–05163, 2019 WL 2137364, at \*4 (D.N.J. May 16, 2019) (quoting *Stokes v. Lanigan*, No. 12–01478, 2012 WL 4662487, at \*3 (D.N.J. Oct. 2, 2012)). "This requires a showing of more than mere negligence." *Id.*

### 1.    Hot Water

"The adequacy, or not, of hot water has not given rise to a specialized jurisprudence with respect to civilly committed persons." *Yatauro*, 984 F. Supp. 2d at 287 ("[T]here is little or no case law on claims on inadequate hot

7

water" in the civil commitment context and "Eighth Amendment criminal cases must be applied with care in this context."). "There is some surface plausibility that … hot water bears no relation to the legitimate purpose of confining the residents at" the STU. *Id.* at 285–86 ("The New Jersey Sexually Violent Predator's Act, under which [plaintiffs] are detained, has two fundamental purposes: to protect the public from dangerous predators and to treat sex offenders who are, by definition, suffering from a mental abnormality.") *Id.* Yet "[t]here is also some authority for considering adequate hot water as a reasonable condition of confinement." *Id.* "That is particularly true when inadequate hot water is combined with other factors affecting health and safety." *Id.* "Certainly a complete failure to take steps to prevent a plaintiff with a medical condition from being daily doused with cold water would plausibly give rise to such a claim." *Id.* at 288.

Here, plaintiffs argue that "one cannot get any reasonable length of time of hot water" when showering in their housing unit. (Am. Compl. ¶ 43.) While Grohs alleges that cold showers have contributed to him "suffering from reoccurring and debilitating back, shoulder, and foot pain, … difficulty walking correctly, and … severe pain when attempting to sleep" (*id.* ¶ 62), Walls does not assert how cold showers have affected him (*see id.* ¶¶ 63–72). Plaintiffs submitted several grievances about the hot water issue, noting that only a limited number of showers are useable. (*Id.* ¶ 36.) Defendants responded to these grievances, advising plaintiffs that maintenance either repaired the issue or were in the process of doing so. (*Id.* ¶¶ 57–60; 65–72). The amended complaint does not specify whether this issue is ongoing. (*See generally* Am. Compl.) But, the fact that defendants were responsive to plaintiffs' grievances and took measures to correct the issue demonstrates that defendants neither departed from acceptable professional judgment standards nor acted deliberately indifferent to the situation. *See Brooks v. Camden Cnty. Jail*, No.

17–00975, 2018 WL 747374, at *7 (D.N.J. Feb. 7, 2018).   Since "the mere fact that the water in a jail cell was cold on isolated occasions during a discrete period of time, without more, is not sufficient to rise to the level of a constitutional violation," I find that plaintiffs fail to state an Eighth or Fourteenth Amendment claims for lack of hot water.   *Id.*

### 2.    Laundry Services

Absent proof that inadequate laundry services were provided to inmates specifically to punish them, laundry services are not considered a basic constitutional right.   *Carson*, 2019 WL 2137364, at *4; *Liles v. Camden Cnty. Dep't of Corr.*, 225 F. Supp. 2d 450, 461 (D.N.J. 2002).   Particularly when alternative laundry options, such as hand washing and air drying, are available and "no disease or injury, nor any mental illness as a result of the laundry conditions" is asserted, courts will not find isolated or short-lived laundry disruptions to rise to a requite hardship level.   *Carson*, 2019 WL 2137364, *4.

The amended complaint does not state how or in what fashion defendants were or became responsible for the laundry in the unit.   *See Davis v. Yates*, No. 15–06943, 2016 WL 5508809, at *8 (D.N.J. Sept. 27, 2016) (finding that the allegation that the defendants were aware of issues were too general to hold defendants personally liable).   Nor are there allegations of how defendants personally promulgated or implemented a policy or practice denying plaintiffs and other residents laundry services.   *See id.*   Although Grohs alleges that his medical condition prevents him from hand-washing his clothing, he identifies no resulting injury rising to the level of a constitutional violation.   (*Id.* ¶¶ 97–99.)   Beyond Walls asserting that he was forced to wear dirty clothes to his kitchen shift, he asserts that he "experienced the same or similar laundry services as described and as suffered by … Grohs." (*Id.* ¶ 103.)   These allegations do not sufficiently describe whether defendants imposed such conditions to punish plaintiffs or to cause them any sufficiently serious harm.

9

To the extent plaintiffs take issue with new dryers being installed in other housing units, "it is not for the Court to question the wisdom of the" STU as to why they replaced the laundry machines in one section but not the other.  *See Carson*, 2019 WL 2137364, at *4 (noting that the DOC and its employees have "a valid, legitimate government interest in operating the STU and its laundry facilities in a reasonable and economical fashion").  While damp or dirty clothing may cause discomfort, "the Constitution 'does not mandate comfortable prisons'" or places of confinement.  *Liles*, 225 F.Supp.2d at 461.  Because alternative means of laundering or drying clothing remain available, plaintiffs allege no requisite hardship that amount to a constitutional deprivation.

### 3.     Air Conditioning

When conditions of extreme heat contribute to unsanitary conditions harming a plaintiff's health and safety, courts may find that a plaintiff sufficiently pleaded a constitutional violation claim.  *Grohs v. Lanigan*, No. 16–07083, 2019 WL 1500621, at *11 (D.N.J. Apr. 5, 2019).  But the Constitution does not confer a categorical right to air conditioning.  *See id.* Thus, the relevant inquiry is whether heat, considering its intensity, duration, ventilation, available mitigation, and effects on health, creates an objectively serious risk and whether officials impose or disregard that risk in a constitutionally culpable manner.  *See Chandler v. Crosby*, 379 F.3d 1278, 1294–98 (11th Cir. 2004).

I recognize that discomfort, lethargy, and sleep disruption caused by summer heat may be unpleasant.  But plaintiffs have not pleaded facts showing either an objectively severe condition or a subjectively culpable state of mind.  Alleging that defendants are aware of this issue merely indicate awareness of a maintenance problem.  (*See* Am. Compl. ¶ 117.)  Plaintiffs do not specify whether defendants received a complaint concerning a serious medical or safety threat related to the heat or that defendants intentionally

10

refused to take reasonable corrective measures. Furthermore, the amended complaint does not allege facts about fans, water, showers, out-of-cell time, or other measures from which it could be plausibly inferred that the conditions, considered as a whole, were extreme and punitive.

### B.    Qualified Immunity

Defendants argue that the amended complaint should be dismissed because they are protected by qualified immunity. Of note, "the defense of qualified immunity is available only for damages claims – not for claims requesting prospective injunctive relief." *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006). "Thus, a qualified immunity defense would have no impact on plaintiffs' claims for injunctive relief." *Davis*, 2016 WL 5508809, at *8.

"Qualified immunity protects government officials … from liability for damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Yatauro*, 984 F. Supp. 2d at 286 (quoting *Pearson v. Callahan,* 555 U.S. 223, 231, (2009)). "It does not matter whether the error relates to the law, the facts, or some mixture of the two." *Id.* "As long as an official reasonably believes that his or her conduct complies with the law, qualified immunity will shield the official from liability." *Id.* "Because qualified immunity is an immunity from suit, and not just a defense to liability, it is effectively lost if a case erroneously proceeds to trial." *Id.* at 287. Thus, "it is desirable to resolve the question of qualified immunity as early as possible, ideally at the motion to dismiss stage." *Id.*

"Immunity does not extend to all officers who engage in necessary official acts." *Id.* at 286. "Rather, officers' individual immunity from suit under Section 1983 is predicated on 'a considered inquiry into the immunity historically accorded the relevant official at common law and the interests

11

behind it.'"  *Id.* (quoting *Hafer v. Melo,* 502 U.S. 21, 29 (1991)).  "Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy, and the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity."  *Id.* (quoting *Forrester v. White,* 484 U.S. 219, 224 (1988)).

When assessing a government official's qualified immunity claims, a court must decide whether (1) "the official's conduct violated a constitutional or federal right"; and (2) "the right at issue was "clearly established."  *Id.* at 287 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Pearson*, 555 U.S. at 244 (holding that these two prongs may be analyzed in either order).  "Whether conduct violates a constitutional right …. is a matter of applying case law to the facts alleged." *Yatauro*, 984 F. Supp. 2d at 287. "Whether such a constitutional violation is 'clearly established'" is a question of whether it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).  "That is to say, the right the official is alleged to have violated must have been 'clearly established' in a particularized way and the court must define the right with the appropriate level of specificity."  *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Even if there is no precedent directly on point, … an action may still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with 'obvious clarity' to the specific conduct in question."  *Id.*

As presently pleaded, defendants are protected by qualified immunity. For the reasons discussed above, the amended complaint does not plausibly allege that defendants violated a clearly established constitutional right.

### III. MOTION FOR PRELIMINARY INJUNCTION[3]

"A preliminary injunction is 'an extraordinary remedy' that should be granted only in limited circumstances." *Id.* at 288 (quoting *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1426–27 (3d Cir.1994)). "In ruling on a motion for a preliminary injunction, the court must consider: (1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest." *Id.* An injunction should be issued "only if the plaintiff has produced evidence sufficient to convince the court that all four factors favor the relief." *Id.* at 288–89.

Plaintiffs seek an order requiring defendants to repair and/or replace their housing unit's air-conditioning system. (Prelim. Inj. Mot. p.3.) Plaintiffs argue that since April 2025, "there has been one problem after another" with the air-conditioning and that the "temperature of [their] rooms has been inhumanely excessive." (*Id.*) As recent as April 2026, their rooms have exceeded 80 degrees Fahrenheit. (*Id.* pp.4, 14, 18.) One day after Grohs requested that the STU's administration service the air-conditioning system, A. Gangi, an administrator not named in this action, stated that the STU was aware of what needed to be done. (*Id.* p.15.) On April 17, 2026, plaintiffs

---

[3] Although I granted plaintiffs' request for an extension to file a reply in further support of the Motion for Preliminary Injunction (ECF No. 28), I have discretion to rule on a motion without awaiting a reply brief. *See JPMorgan Chase Bank, N.A. v. Roggio*, 19-6330, 2024 WL 4800723, at *2 (D.N.J. Oct. 4, 2024). Because the moving and opposition briefs provide a sufficient basis to resolve the Motion for a Preliminary Injunction, the order granting plaintiffs' extension request is vacated.

again complained of the temperature of their rooms, (*Id.* pp. 15, 18.) On the same day, Gangi advised them that the air-conditioning will be turned once the weather is more consistent and the cold season has passed. (*Id.*) Yet, plaintiffs assert that the issue persists, and that they have difficulty sleeping, headaches, a loss of energy, and an inability to participate meaningfully in therapy. (*Id.* pp. 16, 19.)

In opposition to the Motion for Preliminary Injunction (ECF No. 26), defendants submit the certification of John Falvey, the NJDOC's director of legal services. (ECF No. 26–1). Falvey certifies that the STU's air conditioning has been operating since late April 2026. (*Id.* ¶ 12.) On May 15, 2026, maintenance measured the temperature in plaintiffs' housing unit and found temperatures ranging from 69 to 72.5 degrees Fahrenheit, consistent with temperatures in the STU's other units. (*Id.* ¶ 10.)

Since the record reflects that the air-conditioning has since been turned on, I find that the Motion for Preliminary Injunction to be moot. (*Id.* ¶¶ 10, 12.) Plaintiffs' complained-of condition no longer exists. Thus, plaintiffs cannot show a presently threatened injury, much less one that is imminent and irreparable. The possibility that the system could malfunction in the future is insufficient. Should materially different conditions arise, plaintiffs may pursue relief based on an appropriate evidentiary record. But plaintiffs are cautioned that absent a showing of deliberate indifference, they will not succeed on the merits of such a claim. *See Lanigan*, 2019 WL 1500621, at *11; *Chandler*, 379 F.3d at 1294–98.

14

## IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss is **GRANTED** and the Motion for Preliminary Injunction is **DENIED.**  An appropriate order accompanies this opinion.

                                        _/s/ Edward S. Kiel_
                                        **EDWARD S. KIEL**
                                        **UNITED STATES DISTRICT JUDGE**

Dated:  July 27, 2026